**UDALL LAW FIRM, LLP**
**ATTORNEYS AT LAW**
**4801 E. BROADWAY BLVD., SUITE 400**
**TUCSON, AZ  85711-3638**
**Telephone:      (520) 623-4353**
**Fax:               (520) 792-3426**
**tdlaue@udalllaw.com**
**Thomas D. Laue SBN 20872**
**Attorneys for Plaintiff Keith Hagen**

**CROWELL & MORING LLP**
**1001 PENNSYLVANIA AVENUE, N.W.**
**WASHINGTON, DC  20004**
**Telephone:      (202) 624-2500**
**Fax:               (202) 628-5116**
**abagley@crowell.com**
**Andrew W. Bagley*** (***Pro Hac Vice*** **Application to be filed)**
**Attorneys for Plaintiff Keith Hagen**

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| KEITH HAGEN, | NO. |
| Plaintiff, | |
| Vs. | |
| PERSIVIA, INC. | *Assigned to*:  The Hon. |
| Defendant. | |

## **COMPLAINT**

Plaintiff Keith Hagen ("Hagen"), by and through his attorneys, hereby sets forth the following Complaints against Defendant Persivia, Inc. ("Persivia").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

## I.      <u>INTRODUCTION</u>

This case concerns the failure of Persivia, a Massachusetts company, to pay more than $250,000 in severance benefits to Hagen, a resident of Tucson, Arizona.  Persivia's breach of contract and wage payment violation are all the more outrageous because Persivia is currently flush with cash – itself a condition for payment of these benefits – and refusing to honor a deal made in 2016, when Hagen agreed to defer his severance payments because Persivia could not afford to pay.

More specifically, in 2015 Hagen was the CEO of IHM Services, Inc. ("IHM"), a Massachusetts company.  That year, Persivia acquired IHM and fired Hagen for convenience, agreeing in a written severance agreement to pay him various severance benefits.  Persivia soon ceased making severance payments, claiming inability to pay.  In a gesture of good will, Hagen agreed that Persivia could delay the payments of his severance benefits until it was on a more solid financial ground.  In 2016, the parties entered into an amended severance agreement (a) setting forth the financial conditions that Persivia would have to satisfy before becoming obligated to resume payments to Hagen; and (b) requiring Persivia to pay at once the fees Hagen had incurred in addressing his firing by Persivia.

Persivia never paid Hagen's legal fees.  And even after Persivia secured more than three times the threshold amount of cash that would trigger the resumption of severance payments to Hagen, Persivia did not make any payments to Hagen or even notify him of its financial success.  It was only after Hagen saw a press release by Persivia in the fall of 2019

2

that he became aware that Persivia had obtained a solid financial footing. Accordingly, Persivia is in breach of the parties' 2016 amended severance agreement and in violation of applicable wage payment laws. Hagen seeks all remedies available at law and in equity.

## II.   PARTIES

1.      Plaintiff Keith Hagen is an individual who resides in Pima County, Arizona, at 5433 N. Sabino Highlands Place, Tucson, AZ 85749.

2.      Defendant Persivia, Inc. is a privately-held corporation organized under the laws of Delaware, with its principal place of business in Massachusetts, at 4 Mount Royal Avenue, Marlborough, MA 01752. Persivia is the successor corporation to IHM, which was acquired by Persivia in 2015.

## III.   JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction over the instant action pursuant to 28 U.S.C. § 1332. Plaintiff Hagen is a resident of Arizona. Defendant Persivia is incorporated in Delaware, with its principal place of business in Massachusetts. Therefore, the parties are completely diverse. The amount in controversy, excluding fees and interest, exceeds $75,000.

4.      Venue is proper under 28 U.S.C. § 1391.

5.      Persivia is subject to this Court's jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this cause of action arose in Arizona and it has sufficient minimum contacts with the State of Arizona. Persivia knew that Hagen was a resident of Arizona when the parties negotiated the contract

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

at issue over the course of weeks in 2015, through many emails and drafts. During these negotiations, Persivia knew that Hagen was represented by Tucson-based counsel, Thomas Laue of Udall Law Firm LLP. All payments made under the contract, insufficient as they were, were made to Hagen while he was a resident of Arizona. Persivia thus engaged in purposeful conduct aimed at the state and could reasonably expect to be haled into Arizona's courts with respect to that conduct.

## IV.   FACTS

### A.   Hagen Enters Into the Employee Separation and Release Agreement With Persivia

6.      Hagen was the CEO of IHM, a Massachusetts company, until August 28, 2015. While still employed by IHM, Hagen relocated from Massachusetts to Arizona.

7.      In the summer of 2015, Persivia was engaged in negotiations to acquire IHM. In the course of these negotiations, the parties agreed that Hagen, the CEO of IHM, would become eligible for a payment of $600,000 from Persivia in the event that Persivia was itself acquired by a third party.

8.      On August 30, 2015, after Persivia completed its acquisition of IHM, Hagen was terminated as CEO, without cause.

9.      As part of his termination of employment, Hagen entered into an Employee Separation and Release agreement with Persivia (the "Separation Agreement"), dated August 28, 2015. The Separation Agreement provided Hagen the following principal benefits: (a) continued salary payments for one year; (b) reimbursement of COBRA fees ($1,290.97 per month) for one year; and (c) reimbursement of legal fees associated with the

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

4

negotiation and review of Hagen's separation agreement.

10.     Under the Separation Agreement, the severance payments were to begin at the end of January 2016 and continue through January 2017.  COBRA reimbursements would begin immediately in September 2015.

11.     Hagen executed the Separation Agreement in Arizona on September 4, 2015.

**B.     Persivia Only Paid a Small Portion of the Funds Due to Hagen Under the Separation Agreement**

12.     After his separation from Persivia, Hagen submitted his $1,290.97 monthly COBRA expenses for reimbursement by Persivia, as called for in the Separation Agreement. Persivia reimbursed this sum for September, October and November 2015 – only.

13.     Persivia, without notice to Hagen, stopped providing COBRA reimbursement to Hagen after November 2015.  After disregarding numerous attempts by Hagen to reach out about these medical cost reimbursements, Persivia finally informed Hagen that it would no longer be providing the COBRA reimbursement agreed to in the Separation Agreement.

14.     As regards severance pay, Hagen received scheduled payments from Persivia for three pay periods (end of January 2016 and both payments for February 2016), for a total payment of $37,500.

15.     Persivia, without notice to Hagen, stopped all severance payments after February 29, 2016.

**C.     Hagen Enters Into an Amendment to the Separation Agreement With Persivia**

16.     Hagen, operating from his residence in Tucson, Arizona, immediately initiated discussions with Persivia at its headquarters in Massachusetts about its failure to make the

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

scheduled payments under the Separation Agreement.  Persivia many times did not respond.  When it did, the responses Persivia sent from Massachusetts to Hagen in Arizona were evasive and non-committal.  Persivia made many new oral promises, then promptly failed to live up to them.

17.     Hagen repeatedly asked Persivia why it was not making the agreed upon payments.  Persivia responded to Hagen in Arizona that it did not have the cash flow necessary to pay its obligations under the Separation Agreement, and that making such payments would threaten its ability to operate.

18.     Hagen engaged legal counsel in his hometown of Tucson, Arizona, in an effort to resolve Persivia's breach of the Separation Agreement.   This legal counsel, operating from Tucson, Arizona, commenced new negotiations regarding Persivia's obligations.

19.     During these negotiations, Persivia, operating from its headquarters in Massachusetts, informed Hagen's attorneys in Tucson, Arizona, that making the payments required under the Separation Agreement would threaten the very existence of the company.

20.     Hagen negotiated in good faith during April and May 2016 to reach an agreement to resolve Persivia's blatant breaches of the Separation Agreement.  Not wanting to threaten the ability of Persivia to survive, Hagen, operating from Tucson, Arizona, agreed to consider delaying his receipt of the severance payments owing under the Separation Agreement.  Hagen told Persivia that he would wait until Persivia had enough cash on hand to make the payments without endangering its status as an on-going concern.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

6

21.     Persivia, knowing it was communicating with Hagen in Arizona, expressed appreciation for Hagen's gesture and sent to Hagen a written amendment to the Separation Agreement under which remaining severance payments would be postponed until Persivia had enough cash on hand to pay.  This written agreement was signed by Hagen in Arizona and Persivia in Massachusetts on May 12, 2016 (the "Amended Agreement").

22.     The Amended Agreement provides for payments to Hagen on several separate timetables, including (a) an immediate payment of about $365,000 to steeply discount and wipe out Persivia's obligation to pay Hagen $600,000 upon a change in control, which payment, upon information and belief, would be made not by Persivia but by Persivia's principal investor; (b) an immediate payment of Hagen's outstanding legal fees to his counsel, Crowell & Moring LLP, relating to Persivia's 2015 acquisition of IHM; and (c) a set of conditions for the resumption of the severance payments owing under the Separation Agreement if and when Persivia had more cash on hand.

23.     Upon information and belief, Persivia's principal investor made the payment described in Paragraph 22(a).  This lawsuit pertains to Persivia's failure to make the payment addressed in Paragraph 22(b) and the severance payments addressed in Paragraph 22(c).  Those payments were set out in the Amended Agreement as follows:

**Crowell & Moring Legal Bills**

Crowell & Moring provided legal services to HAGEN. PERSIVIA shall pay Crowell & Moring invoice 154410 dated August 19, 2015 in the amount of $15,700.75.

**Severance Payments Due Pursuant to Separation Agreement**

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Pursuant to the terms of the Separation Agreement, PERSIVIA owes HAGEN $252,500 (the "Unpaid Balance").  The Unpaid Balance shall become payable upon the earlier to occur of the following: (a) PERSIVIA raises at least US$5,000,000 in new outside equity investment; (b) PERSIVIA is acquired or closes an initial public offering; or (c) PERSIVIA becomes cash flow positive by at least US$500,000 for any calendar year beginning with the 2016 calendar year and has at least a US$1,000,000 financial buffer in cash or credit line.
>
> In the event of (a) or (b) the Unpaid Balance shall be paid to HAGEN in a single lump sum payment by wire transfer or immediately available funds within three (3) business days of the closing of event (a) or (b).  In the event of (c) the Unpaid Balance will be paid as part of the standard PERSIVIA payroll, over a 10.5 calendar month period, commencing with the payroll period due immediately after event (c), without further interruptions.

24.     Persivia never made payment of Hagen's legal fees or severance payments as called for in the Amended Agreement.

**D.     Persivia's Silence Since Signing the Amended Agreement**

25.     After the parties executed the Amended Agreement in May 2016, Hagen had to rely on Persivia's good faith in making the payment of legal fees directly to his counsel. Because Persivia is a closely-held corporation – and thus does not disclose its financial results publicly – Hagen also had to rely on Persivia to provide updates as to whether the financial conditions set forth in the Amended Agreement had come to pass.

26.     Persivia did not communicate with Hagen in any way to provide any type of status report or other financial information.  Persivia's silence lasted more than three years.

27.     All subsequent communications between the parties, as described below, were initiated by Hagen from Arizona after Hagen saw an October 2019 press release about Persivia's finances.

**E.      Persivia Triggers Amended Agreement Event Section 5(a)**

28.      In 2019, Persivia raised more than $15 million in new outside equity investment.

29.      On October 10, 2019 Persivia published a press release on its website trumpeting its new financing from investor Petrichor Healthcare Capital Management.  The press release stated as follows:

> Marlborough, MA – Persivia Inc. ("Persivia" or the "Company"), the AI-driven value-based care solution provider, has announced today that it has closed a $15 million financing from Petrichor Healthcare Capital Management ("Petrichor"), completing its Series C round to support an array of growth initiatives.

30.      Upon information and belief, Petrichor is a new outside investor in Persivia. As such, all amounts discussed in Persivia's press release constitute "new outside equity investment," as set forth in Section 5(a) of the Amended Agreement.

31.      Because the Persivia press release discussed an event that would trigger payment to Hagen under Section 5(a) of the Amended Agreement, Hagen began reaching out to Persivia.  Persivia did not respond.

32.      After receiving multiple communications from Hagen, Persivia finally responded to Hagen in Arizona that, despite the public announcement about having secured $15 million in financing, it had not really done so.  Persivia claimed that it had only raised equity of $3,125,000 through the sale of Series C Preferred Shares, and that it had separately received $1,874,998 in debt financing.

33.      Remarkably, Persivia's claimed Series C figures and its debt financing figures total $4,999,998, exactly two dollars less than the $5 million threshold under the Amended

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

Agreement.

34.     Persivia's gamesmanship, however, was laid to rest in its own disclosure to the Securities and Exchange Commission ("SEC") regarding its capital raise:

> Persivia Inc. announced that it will issue 3,785,621 series C preferred shares at a price of $2.3664 per share for gross proceeds of $8,958,293.534400 and it will issue convertible debt for $6,500,000 on July 25, 2019.   The company will issue securities pursuant to exemption provided under Regulation D.   The shares carry cumulative fixed dividend of $0.1893 per share per annum.   The shares are convertible into common shares at a fixed conversion price of $2.3664 per share.   The transaction will be raised at post money valuation of $46,532,125.   As of August 5, 2019, the company issued 792,342 preferred shares for gross proceeds of $1,874,998 and issued convertible debt for proceeds of $3,125,000 its first tranche from a single investor.

35.     Despite these public pronouncements, on October 16, 2019, Ammar Afif, Persivia's CFO, wrote an email to Hagen's attorney in Arizona, stating as follows:  "We have secured a commitment from Petrichor for $15M.  We have only drawn down $5M which was a mix of debt/equity.  As per my reading of the [Amended Agreement] does not yet qualify for payment to Keith Hagen."

36.     To the extent Persivia's CFO was arguing that the debt component of the new financing does not constitute "equity," he is wrong as a matter of law.  Per the SEC's 17 C.F.R. § 230.405, the term "equity security" is defined as any stock or any security convertible, with or without consideration, into such a security."  In other words, both the series C preferred shares and the convertible security debt both constitute "equity securities."

37.     Persivia's SEC filing shows that it will issue C preferred shares for $8,958,293.53  and  convertible  debt  for  $6,500,000  equaling  $15,458,293.53  of  "new

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

outside equity investment." This is more than three times the amount that triggers immediate payment to Hagen of his unpaid severance wages under Section 5(a) of the Amended Agreement.

**F.** **Persivia's Financials Confirm That Section 5(c) of the Amended Agreement Has Also Been Satisfied**

38.    As quoted in Paragraph 23 above, the Amended Agreement obligates Persivia to resume severance payments to Hagen when it "becomes cash flow positive by at least US$500,000 for any calendar year beginning with the 2016 calendar year and has at least a US$1,000,000 financial buffer in cash or credit line." Such payments must be made "commencing with the payroll period due immediately after" the results are achieved.

39.    Upon information and belief, Persivia's financial performance both in 2018 and in 2019, while unknown to Hagen, included (a) cash flow positive results in an amount exceeding $500,000, and (b) credit and/or cash availability at the end of the year in excess of $1 million. As such, the two requirements for the resumption of payments to Hagen were satisfied as early as January 2019, even if Hagen only first discovered this in the fall of 2019.

40.    Upon information and belief, Persivia parlayed its positive 2018 financial results into a massive, $15 million capital raise in 2019, as detailed in Paragraphs 29-34 above.

41.    Upon information and belief, Persivia made payments against old debts in 2019 and shareholder notes in an amount exceeding $1,000,000.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

11

42.     At no time after the 2018 calendar year or the 2019 calendar year did Persivia notify Hagen of its yearly financial results or its cash flow status, and it has not resumed making severance payments to Hagen.

**G.      Persivia Failed to Pay Crowell & Moring Legal Bills**

43.     Section 3 of the Amended Agreement requires Persivia to pay, on Hagen's behalf, a legal services bill from Hagen's Crowell & Moring attorneys in the amount of $15,700.75.

44.     Persivia has not paid the legal fees due to Crowell & Moring.

## V.     COUNTS

### COUNT I
### Breach of Contract Under Arizona Law
### for Failure to Pay Crowell & Moring Invoice

45.     Hagen repeats and realleges all preceding paragraphs, as if fully set forth herein.

46.     The Amended Agreement is a valid and enforceable contract between Hagen and Persivia.

47.     Hagen performed all his obligations under the Amended Agreement.

48.     Section 3 of the Amended Agreement requires that Persivia pay Hagen's attorneys' fees invoice relating to his 2015 departure as CEO of IHM.

49.     Persivia did not pay Hagen's attorneys' fees invoice, thereby breaching its obligations under Section 3 of the Amended Agreement.

50.     As a result of Persivia's breach of contract, Hagen has suffered damages, including the loss of a payment required to be made on his behalf.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

51.     Hagen is entitled to recover all damages caused by Persivia's breach of contract.

52.     Hagen is entitled to an award of his attorney fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

**COUNT II**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**for Failure to Pay Crowell & Moring Invoice**

53.     Hagen repeats and realleges all preceding paragraphs, as if fully set forth herein.

54.     The Amended Agreement is a valid and enforceable contract between Hagen and Persivia, subject to the implied covenant of good faith and fair dealing.

55.     Section 3 of the Amended Agreement requires that Persivia pay Hagen's attorneys' fees invoice relating to his 2015 departure as CEO of IHM.

56.     At all times Persivia had sufficient assets to pay a $15,700 invoice.

57.     Despite Hagen's commitment to help Persivia stay afloat in 2016 by delaying his receipt of severance monies owing to him, Persivia made no effort to meet its obligations to pay the Crowell & Moring invoice on Hagen's behalf.

58.     Persivia did not make the $15,700.75 payment to Crowell & Moring on Hagen's behalf.

59.     Persivia's decision to pay off other debt and ignore its obligations to Hagen, including the payment of the Crowell & Moring invoice on Hagen's behalf, constitute acts of bad faith and an attempt to cheat Hagen out of the benefits he expected to receive from the Amended Agreement.

60.     Hagen is entitled to recover all damages caused by Persivia's breach of the covenant of good faith and fair dealing.

61.     Hagen is entitled to an award of his attorney fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

### COUNT III
**Breach of Contract Under Arizona Law**
**for Failure to Make Payments Due Pursuant to Amended Agreement Section 5(c)**

62.     Hagen repeats and realleges all preceding paragraphs, as if fully set forth herein.

63.     The Amended Agreement is a valid and enforceable contract between Hagen and Persivia.

64.     Hagen performed all his obligations under the Amended Agreement.

65.     On December 31, 2018, Persivia's financial results for calendar year 2018 met the triggering events requiring severance payments to Hagen, as spelled out in Section 5(c) of the Amended Agreement.

66.     On December 31, 2019, Persivia's financial results for calendar year 2019 met the triggering events requiring severance payments to Hagen, as spelled out in Section 5(c) of the Amended Agreement.

67.     The Amended Agreement obligates Persivia to pay Hagen $252,500 as part of its standard payroll over a 10.5 calendar month period, commencing with the payroll period following the achievement of events defined in Section 5(c).   Persivia did not do so, breaching the Amended Agreement.

68.     Based on 2018 financial results, payments to Hagen should have resumed as

14

of January 2019.  Because more than 10.5 months have elapsed since that date, Hagen is entitled to immediate payment in full of all amounts due.

69.     As a result of Persivia's breaches of contract, Hagen has been deprived of financial compensation that was rightfully and legally his.

70.     Hagen is entitled to recover all damages caused by Persivia's breach of contract.

71.     Hagen is entitled to an award of his attorney fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

## COUNT IV
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**for Failure to Notify Pursuant to Amended Agreement Section 5(c)**

72.     Hagen repeats and realleges all preceding paragraphs, as if fully set forth herein.

73.     The Amended Agreement is a valid and enforceable contract between Hagen and Persivia, subject to the implied covenant of good faith and fair dealing.

74.     Persivia's financial results for 2018 and 2019 indicate that it met the triggering thresholds for payments to Hagen, as called for in the Amended Agreement Section 5(c).

75.     Persivia parlayed its 2018 financial results into a large capital raise, ensuring it would have plenty of cash on hand for 2019 and beyond.

76.     Persivia did not make any attempt to contact Hagen regarding its financial results, even though, in 2015, Hagen had voluntarily agreed to a delay in his own compensation to help keep Persivia afloat.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

15

77.     Hagen reasonably believed that his act of cooperation in 2015 would prompt Persivia to ensure he would be made whole once Persivia had sufficient cash on hand to make the payments owing to Hagen.

78.     Persivia's lack of transparency and failure to communicate its 2018 and 2019 financial results to Hagen were acts of bad faith and an attempt to cheat Hagen out of the benefits he expected to receive from the Amended Agreement.

79.     As a result of Persivia's breach of the covenant of good faith and fair dealing, Hagen was deprived of financial compensation that was rightfully and legally his.

80.     Hagen is entitled to recover all damages caused by Persivia's breach of the covenant of good faith and fair dealing.

81.     Hagen is entitled to an award of his attorney fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

### COUNT V
**Breach of Contract Under Arizona Law**
**for Failure to Make Payments Due Pursuant to Amended Agreement Section 5(a)**

82.     Hagen repeats and realleges all preceding paragraphs, as if fully set forth herein.

83.     The Amended Agreement is a valid and enforceable contract between Hagen and Persivia.

84.     Hagen performed all his obligations under the Amended Agreement.

85.     Section 5(a) of the Amended Agreement states that payments to Hagen are required if Persivia raises $5,000,000 of outside equity investment.

86.     In 2019, Persivia secured a commitment from Petrichor for $15M in new

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

capital. Persivia's SEC filing shows that they will issue C preferred shares for $8,958,293.53 and convertible debt for $6,500,000, equaling $15,458,293.53 of new equity.

87. Despite raising this new capital, Persivia has not made payment to Hagen, breaching the Amended Agreement.

88. As result of Persivia's breach of contract, Hagen has been deprived of financial compensation that was rightfully and legally his.

89. Hagen is entitled to recover all damages caused by Persivia's breach of contract.

90. Hagen is entitled to an award of his attorney fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

## COUNT VI
### Breach of Implied Covenant of Good Faith and Fair Dealing, Equity Raise Pursuant to Amended Agreement Section 5(a)

91. Hagen repeats and realleges all preceding paragraphs, as if fully set forth herein.

92. The Amended Agreement is a valid and enforceable contract between Hagen and Persivia, subject to the implied covenant of good faith and fair dealing.

93. Section 5(a) of the Amended Agreement states that if Persivia raises $5,000,000 in new equity it would be required to make a lump sum payment of $252,500 to Hagen.

94. In 2019 Persivia "secured a commitment" for more than $15 million in new equity from their new investor, Petrichor. Persivia's SEC filing shows that it will issue preferred shares for $8,958,293.53 and convertible debt for $6,500,000.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

95.     In 2019 Persivia issued $3,125,000 in Series C Preferred Debt and $1,874,998 in Convertible Debt, equaling $4,999,998 of new outside equity investment.   Persivia's financial statements state that it has "drawn down $5M."

96.     Persivia utilized its 2019 capital raise to pay off more than $1 million in old debt.

97.     Persivia did not make any attempt to contact Hagen regarding its financial results, even though, in 2015, Hagen had voluntarily agreed to a delay in his own compensation to help keep Persivia afloat.

98.     Hagen reasonably believed that his act of cooperation in 2015 would prompt Persivia to ensure he would be made whole once Persivia had sufficient cash on hand to make the payments owing to Hagen.

99.     Persivia's act of trying to limit the appearance of a 2019 equity raise to $4,999,998 ($2 under the threshold of the Amended Agreement) and of refusing to pay Hagen despite securing more than $15 million for a new investor, are acts of bad faith on the part of Persivia and an attempt to cheat Hagen out of the benefits he expected to receive from the Amended Agreement.

100.    As a result of Persivia's breach of the covenant of good faith and fair dealing, Hagen was deprived of financial compensation that was rightfully and legally his.

101.    Hagen is entitled to recover all damages caused by Persivia's breach of the covenant of good faith and fair dealing.

102.    Hagen is entitled to an award of his attorney fees and costs pursuant to A.R.S.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

§§ 12-341 and 12-341.01.

## COUNT VII
### Failure to Pay Wages – ARS § 23-350 et seq.

103.    Hagen repeats and realleges all preceding paragraphs, as if fully set forth herein.

104.    The severance payments owing to Hagen, as set forth in the Amended Agreement, constitute wages under Arizona law.  This is because the commitment to pay the severance payments were made in 2015 and again on May 12, 2016.  This was before the Arizona Legislature changed the wage payment statute to exclude severance pay from the definition of wages.

105.    Hagen first discovered in the fall of 2019 that Persivia had met the necessary financial conditions and thus failed to pay the agreed-upon severance wages.

106.    Persivia's failure to pay the severance wages, even after securing large amounts of capital, represents a willful and bad faith failure to pay wages.

107.    Under Arizona law, a failure to pay wages under such circumstances warrants trebling the amount of unpaid wages.  A.R.S. § 23-355(A).

108.    Under Arizona law, a failure to pay wages under such circumstances warrants an award of the reasonable attorneys' fees necessary to secure payment.

### VI.    JURY DEMAND

Hagen demands a trial by jury on all issues.

### VII.    PRAYER FOR RELIEF

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

WHEREFORE, Hagen respectfully requests that the Court enter final judgment against Persivia on the following terms:

A.      Judgment on all counts in favor of Hagen;

B.      An Order declaring that Persivia's actions in failing to pay all outstanding monies owed to Hagen and Crowell & Moring constitute breaches of the Amended Agreement under Arizona law;

C.      An Order directing Persivia to pay damages of $252,500, as a lump sum, to Hagen as reflected in this Complaint and furthermore clarifying that, per the Amended Agreement, these specific funds must be processed as a payroll check with all appropriate wage, salary and employer taxes withheld;

D.      An Order directing Persivia to pay to Hagen, pursuant to A.R.S. § 44-1201, 10% interest, both pre-judgment and post-judgment, on the past due amounts;

E.      An Order directing Persivia to pay taxable costs related to all severance related interest payments pursuant to A.R.S. § 12-341 or as otherwise allowed by law;

F.      An Order directing Persivia to pay Hagen $15,700.75 under Section 3 of the Amended Agreement on damages related to the outstanding Crowell & Moring invoice;

G.      An Order directing Persivia to pay taxable costs related to the Crowell & Moring invoice payment pursuant to A.R.S. § 12-341 or as otherwise allowed by law;

H.      An Order directing Persivia to pay to Hagen, pursuant to A.R.S. § 44-1201, 10% interest, both pre-judgment and post-judgment, on the Crowell & Moring invoice amount;

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

I.     An Order awarding Hagen reasonable attorneys' fees, pursuant to A.R.S. § 12-341.01 or as otherwise allowed by law;

J.     An Order awarding Hagen taxable costs related to attorneys' fees pursuant to A.R.S. § 12-341 or as otherwise allowed by law; and

K.     An Order directing Persivia to pay Hagen, pursuant to A.R.S.§23-355(A), three times the unpaid severance wages called for in the Amended Agreement.

L.     An Order awarding Hagen the reasonable attorneys' fees necessary for him to recover the unpaid severance wages.

M.     An Order awarding Hagen all such other and further relief, at law or in equity, that the Court deems just and proper.

RESPECTFULLY SUBMITTED this 13th day of May, 2020.

UDALL LAW FIRM, LLP


By:  */s/  Thomas D. Laue*_____
        Thomas D. Laue
        Attorney for Plaintiff

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353